IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
MAY 0 7 2013
TIMOTHY M. O'BRIEN, Clerk
By_____ Deputy

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                     Case No.: 13-mj-8106-DJW

CHARLES HENDERSON, JR.,

Defendant.

## CRIMINAL COMPLAINT

I, Nick Wills, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about May 6, 2013, in the District of Kansas and elsewhere, the defendant,

**CHARLES HENDERSON, JR.,**

knowingly distributed and possessed with intent to distribute more than 100 grams of a mixture or substance containing heroin, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(i).

### BACKGROUND AND EXPERTISE

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the Kansas City District Office. I have been employed with the DEA since March 2010. As a Special Agent of the DEA, I am empowered to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21, United States Code, Section 841. While with the DEA, I have participated in training that details the intricacies of drug investigations, involving the possession and sale of illegal drugs and drug

paraphernalia to include possession with intent to distribute, distribution of controlled substances (including cocaine, marijuana, heroin and methamphetamine), as well as investigations directed at monetary transactions involving the proceeds of specified unlawful activities and conspiracies, associated with criminal drug trafficking offenses. In addition, I was previously employed as a law enforcement officer with the City of Kansas City, Missouri, from September 2007 until being hired by DEA. During that time, I participated in numerous drug arrests. My training and experience has involved physical surveillance, execution of search warrants, arrests of numerous drug traffickers, and the handling of cooperating sources and sources of information. On numerous occasions, I have spoken with suspects, defendants, and narcotics investigators concerning the methods and practices of drug traffickers. Through my training and experience, I have become familiar with the methods employed by drug traffickers in general to smuggle, safeguard, and distribute drugs, and to collect and launder drug-related proceeds. These methods include the use of debit calling cards, public telephones, wireless communications technology such as paging devices and cellular telephones, counter surveillance, elaborately-planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and coded communications in an attempt to avoid detection by law enforcement and circumvent drug investigations.

2. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents, task force officers, and other law enforcement officers who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of

this investigation. The following is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but are the facts that I believe support a finding of probable cause for the complaint and arrest warrant requested.

## PROBABLE CAUSE

3. On 05-06-2013 at approximately 9:00 AM, members of DEA Kansas City utilized a confidential source (hereinafter referred to as "CS"), who has previously been proven reliable, to order a sample of black tar heroin from Charles HENDERSON, JR. (hereinafter referred to as HENDERSON). HENDERSON is a known source of heroin supply to investigators based upon controlled purchases conducted on two prior occasions. In response to the CS phone call, TFO Eric Jones established surveillance at 10517 Mastin, Overland Park, KS, the known residence for HENDERSON.

4. At approximately 9:30 AM, HENDERSON was observed leaving the apartment complex in a white Cadillac bearing Missouri tag MH0Z4K. (This is the same vehicle that HENDERSON was the subject of a traffic stop on 04/10/2013 at approximately 1:30 AM. During that stop, officers of the Overland Park, KS Police Department seized a 9mm handgun and a small quantity of marijuana from under HENDERSON's seat.) Surveillance agents then followed HENDERSON directly to 1721 Richmond Ave., Kansas City, KS.

5. At approximately 10:05 a.m., TFO Jones observed HENDERSON exit the front door of the residence and get back into the white Cadillac. Agents followed this vehicle to the area of 14 N. Tremont, Kansas City, Kansas where he parked on Tremont facing

southbound. Based upon previous purchases of heroin from HENDERSON, and the information which led agents to believe that he was bringing an unknown quantity of heroin to 14 N. Tremont, agents moved into the area and effected the arrest at approximately 10:20 AM. He was immediately handcuffed at that time. A search incident to arrest revealed a clear plastic baggie of suspected heroin from the inside left jacket pocket. A subsequent field test conducted by SA Wills yielded a positive response for the presence of heroin; the heroin was later processed and weighed approximately 109.2 gross grams. Agents also took custody of approximately 5 cellular phones from HENDERSON's jacket and pants pockets. HENDERSON also had about $86.00 in U.S. currency in his front left pants pocket. A search of the vehicle also revealed one cellular phone, which was subsequently seized; and a set of keys.

6. SA Dorley, SA Ziesman-Hicks and TFO Grasher immediately returned to 1721 Richmond and setup surveillance of the residence. A few minutes later, all agents accompanied HENDERSON back to the residence. Upon returning, TFO Jones verbally read HENDERSON his Miranda warning as witnessed by TFO Victor Chavez. HENDERSON said that he understood his rights. While under Miranda, HENDERSON admitted that there was a personal use amount of marijuana stored inside the residence.

7. When asked for consent to search 1721 Richmond, HENDERSON stated that the home belonged to his grandmother. TFO Jones then contacted Annie UNION, HENDERSON's grandmother, in the presence of HENDERSON. UNION and HENDERSON consented to a search of the southwest bedroom of residence, which is utilized by HENDERSON. The subsequent search yielded the discovery and seizure of

approximately 403.84 gross grams of black tar heroin. Agents additionally seized two 15 round 9mm magazines filled to capacity, an additional 9mm live round, a shoulder holster containing two .45 caliber magazines with one of which containing nine live rounds, an additional eight cellular telephones, a drug ledger, an undetermined amount of US currency, and an empty 30 round magazine.

8. HENDERSON was ultimately transported to the Wyandotte County Sheriffs Detention Center and held overnight until custody could be transferred to the United States Marshal Service in the District of Kansas.

_____
Nick Wills, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this May 7, 2013.

_____
HONORABLE DAVID J. WAXSE
UNITED STATES MAGISTRATE

## PENALTIES:

**COUNT 1:**

NLT 5 years; NMT 40 years;
NMT $5,000,000.00 fine;
NLT 4 years Supervised Release; and
$100.00 Special Assessment Fee.

If the defendant has a prior felony drug offense conviction, the penalties are:

NLT 10 years; NMT life imprisonment;
NMT $8,000,000.00 fine;
NLT 8 years Supervised Release; and
$100.00 Special Assessment Fee.